**United States District Court**
For the Northern District of California

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   JEFF ANDERSON; BRET ADEE; DAVID                No. C 16-00068 WHA
     HACKENBERG; LUCAS CRISWELL;
11   GAIL FULLER; CENTER FOR FOOD
     SAFETY; AMERICAN BIRD
12   CONSERVANCY; PESTICIDE ACTION               **ORDER RE MOTION TO**
     NETWORK NORTH AMERICA;                      **DISMISS AND MOTION**
13   POLLINATOR STEWARDSHIP COUNCIL,             **TO INTERVENE**
14             Plaintiffs,
15      v.
16   GINA MCCARTHY; ENVIRONMENTAL
     PROTECTION AGENCY,
17
18             Defendants.
     _____/
19
20                        **INTRODUCTION**
21          In this challenge to federal agency action, defendants move to dismiss for lack of
22   subject-matter jurisdiction under Rule 12(b)(1).  In addition, several trade associations that
23   would be affected by the outcome of this case move to intervene.  To the extent stated below,
24   the motion to dismiss is **DENIED**.  The motion to intervene is **GRANTED**.
25                         **STATEMENT**
26          This case challenges the United States Environmental Protection Agency's regulation of
27   pesticides.  Plaintiffs are several bee keepers, farmers, and organizations concerned about the
28   effect of pesticides on honey bees and other pollinators.  Defendants are the EPA and its
     Administrator, Gina McCarthy.

According to plaintiffs' complaint, many crop seeds, like corn and soybean seeds, are coated with pesticides called neonicotinoids.  After the coating is applied, the seeds absorb a small portion of the chemical coating.  The rest of the coating, however, "is either scraped off the seeds and blown away as dust during machine planting, or sloughed off into the surrounding soil and groundwater" (Compl. ¶ 34).  The effects of the chemical "dust off" extend beyond the full-grown plants, the seeds themselves, and result in the death of honey bees, catastrophic hazard to aquatic systems, and "destruction of rural invertebrate life across a vast portion of the United States" (*id*. at ¶ 37).

The EPA regulates pesticide use via the Federal Insecticide, Fungicide, and Rodenticide Act.  Under FIFRA, a pesticide is defined as a "mixture of substances that are intended to prevent, destroy, repel or mitigate a pest."  7 U.S.C. 136(u)(1).  Pesticides must be registered with the EPA before they can be used, meaning that the EPA must grant a license that establishes the terms and conditions under which the pesticide may be lawfully sold, distributed, and used.  FIFRA allows the EPA to exempt by regulation any pesticide which the Administrator determines will not have "unreasonable adverse affects on the environment."  7 U.S.C. 136w(b); 7 U.S.C. 136a(c)(5).

In 1988, the EPA exempted from FIFRA certain "treated articles."  If an article were treated with a pesticide that had already been registered, and the treatment was for the protection of the article itself, then that new use of the pesticide to treat that article would be exempt from new registration under FIFRA.  For example, "paint treated with a pesticide to protect the paint coating, or wood products treated to protect the wood against insect or fungus infestation" are exempt if the specific pesticide has already been registered for such use.  40 C.F.R. 152.25(a).

In 2003, the EPA clarified the "treated article" exemption as it related to coated seeds, as set forth in a release titled "Harmonization of Regulation of Pesticide Seed Treatment in Canada and the United States" (Compl. ¶ 36).  Through this action, the EPA stated that pesticide-coated seeds were pesticides under FIFRA, but would be exempt as "treated articles"

United States District Court

For the Northern District of California

if they had been treated with an already-registered pesticide and their effects did not "*extend beyond the seed itself*" (*ibid*) (emphasis added).

In 2013, the EPA issued a "Guidance for Inspecting Alleged Cases of Pesticide Related Bee Incidents," which announced that a "[t]reated seed (and any resulting dust-off from a treated seed) may be exempted from registration under FIFRA as a treated article and as such its planting is not considered a pesticide use" (*id*. at ¶¶ 39–40). This new policy was never promulgated in a formal regulation and did not undergo the typical process that would accompany a formal regulation. "The 2013 Guidance directly affects beekeepers and other Plaintiffs in that it states there will not be investigation or enforcement against any of their bee kills or other harm caused by neonicotinoid-coated seeds or resulting contaminated dust because the kills and other harm incidents are not considered a 'pesticide use'" (*id*. at ¶ 41).

In January 2016, plaintiffs brought this lawsuit, alleging that the 2013 Guidance constituted a final agency action reviewable under the Administrative Procedure Act. In Claims I, III, and IV, plaintiffs assert that the 2013 Guidance is (1) in excess of the EPA's statutory authority, (2) is arbitrary and capricious, and (3) failed to comply with the rulemaking requirements set forth in the APA. Claim II alleges the EPA failed to regulate and enforce FIFRA by neglecting to enforce pesticide regulations in regards to treated seeds. Now, defendants move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, asserting that the 2013 Guidance did not constitute final agency action and is thus unreviewable under the APA. Furthermore, several trade associations that would be affected by the outcome of this case move to intervene. This order follows full briefing and oral argument.

**ANALYSIS**

**1.    MOTION TO DISMISS.**

The issue presented by the instant motion to dismiss is whether the 2013 Guidance and the EPA's actions constituted final agency action, such that subject-matter jurisdiction is proper under the APA. Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject-matter jurisdiction over the claim. There are two permissible jurisdictional attacks under Rule 12(b)(1): a facial attack, where the court's inquiry is limited to the allegations in the

complaint; or a factual attack, which permits the court to look beyond the complaint at affidavits or other evidence. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). If the moving party asserts a facial challenge, the court must assume that the factual allegations asserted in the complaint are true and construe those allegations in the light most favorable to the plaintiff. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). If the moving party asserts a factual attack, a court may resolve the factual disputes by "look[ing] beyond the complaint to matters of public record, without having to convert the motion into one for summary judgment." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

Importantly, however, "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and the substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the 'merits' of an action." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citations and quotations omitted). The question of jurisdiction and the merits of an action are intertwined where "a statute provides the basis for both the subject-matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Ibid.*

As stated above, the issue raised by this motion is whether the 2013 Guidance constituted final agency action. "As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 591 (9th Cir. 2008) (internal quotation omitted).

Here, this order finds that the factual dispute between the parties — whether the 2013 Guidance constituted final agency action — is "so intertwined" with the merits that a "jurisdictional finding of genuinely disputed facts is inappropriate." If the 2013 Guidance did consummate a new rule, and thus a final agency action, then defendants clearly violated federal law by failing to comply with rulemaking requirements. If the 2013 Guidance did not constitute

final agency action, then subject-matter jurisdiction is lacking, and the case must be dismissed. Plaintiffs allege that the 2013 Guidance qualifies as a final agency action because it extended the 2003 rule from exempting treated seeds whose effects did not "extend beyond the seed itself," to something much broader, namely exempting all coated seeds, whether or not their environmental affects were contained to the seeds themselves or extended far beyond (such as affecting honey bees and other wildlife).

In our circuit, essentially all environmental cases concerning subject-matter jurisdiction are decided only after reviewing the administrative record, typically at the summary judgment stage. *See, e.g. High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir. 2004); *River Runners for Wilderness v. Martin*, 593 F.3d 1064 (9th Cir. 2010); *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660 (9th Cir. 1998); *Or. Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006). So too here. At this stage, without the benefit of the entire administrative record, this order cannot find as a matter of law that the 2013 Guidance did not constitute final agency action.

Defendants argue that the 2013 Guidance is not an agency action because it is not "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or a failure to act." 5 U.S.C. 551(13). Instead, defendants contend the 2013 Guidance, at least in regards to coated seeds, merely constituted a recommendation. An agency action, however, "is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478 (2001). Based on the current record, without resolving factual disputes, it is plausible that defendants' decision to exempt coated seeds from FIFRA, without regard to their effects beyond the seeds themselves, constituted agency action.

Next, defendants argue that even if the 2013 Guidance constituted agency action, it was not final within the meaning of the APA. Specifically, the sentence in the 2013 Guidance which states "[t]reated seed (and any resulting dust-off from treated seed) may be exempted from registration under FIFRA and as such its planting is not considered a pesticide use" (Mann Decl. Exh. 1 at 7), does not amount to a "definitive statement of the agency's position." *Or.*

*Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).  While defendants may ultimately prevail on this issue, the current record does not support this conclusion as a matter of law.  Plaintiffs allege that defendants' action determined rights and obligations, and due to changing the policy regarding the coated seeds exemption, "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Specifically, plaintiffs allege and assert in declarations that the EPA's action will result in use of neonicotinoid-coated seeds on 150 million agricultural acres, which will introduce millions of pounds of insecticides into agricultural areas, leading to devastating effects on the business of the bee-keeper plaintiffs (Opp. at 18).  Without resolving genuine factual disputes, and without the benefit of the full administrative record, this order cannot determine, as a matter of law, that defendants' action was insufficiently final.

This motion presents a close call, as defendants put forth a strong argument in support of dismissal of the lawsuit at the Rule 12 stage, even without the benefit of the full administrative record.  Defendants, however, do not cite one decision from our court of appeals affirming a Rule 12 dismissal in a case similar to ours.  In the most analogous case to ours, *Oregon Natural Desert Association*, 465 F.3d at 979, our court of appeals reversed the district court's dismissal under Rule 12(b)(1) and remanded for a determination on the full administrative record.  This precedent is in line with other decisions from our court of appeals, in which essentially all environmental/administrative cases concerning subject-matter jurisdiction are decided only after reviewing the administrative record, typically at the summary judgment stage.  Accordingly, this order finds the matter better suited for adjudication at the summary judgment stage and thus defendants' motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

    **2.**        **MOTION TO INTERVENE.**

Separate from defendants' motion to dismiss, several not-for-profit trade associations move to intervene in our case as a matter of right.  They include CropLife America, the American Seed Trade Association, the Agricultural Retailers Association, the American Soybean Association, the National Cotton Council of America, the National Association of Wheat Growers, and the National Corn Growers Association.  All are represented by the same

United States District Court

For the Northern District of California

1   counsel.  These proposed intervenors seek to "protect their members' vital interests in the

2   development, distribution, sale, and use of the seed treatments and treated seed that are at issue

3   in this case and in an effective, efficient regulatory process for these products" (Br. at 1).

4        Under Rule 24(a)(2), a party is entitled to intervene as a matter of right if (1) the motion

5   is timely, (2) the movant claims a significantly protectable interest relating to the property or

6   transaction which is the subject of the action, (3) the disposition of the action may as a practical

7   matter impair or impede the movant's ability to protect that interest, and (4) the movant's

8   interest is inadequately represented by the parties to the action. *Wilderness Soc'y v. U.S. Forest*

9   *Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).  "A liberal policy in favor of intervention

10  serves both efficient resolution of issues and broadened access to the courts.  By allowing

11  parties with a practical interest in the outcome of a particular case to intervene, we often prevent

12  or simplify future litigation involving related issues; at the same time, we allow an additional

13  interested party to express its views before the court." *United States v. City of Los Angeles*, 288

14  F.3d 391, 397–98 (9th Cir. 2002) (internal quotation omitted).

15       Defendants do not oppose intervention by proposed intervenors.  Plaintiffs do oppose,

16  solely on the basis that proposed intervenors have failed to demonstrate a protectable interest

17  sufficient to warrant intervention.  Plaintiffs assert, in essentially conclusory fashion, that the

18  economic harm alleged is insufficient to warrant intervention.  For the reasons stated below,

19  however, the proposed intervenors, whose interests can be broken down into three separate

20  groups, all satisfy Rule 24(a)(2)'s test for intervention.

21       Each intervenor has demonstrated a protectable interest. *First*, as demonstrated by the

22  voluminous declarations accompanying the motion, CropLife members own more than two

23  dozen neonicotinoid seed treatment registrations issued by the EPA through FIFRA (Lattimore

24  Decl. at ¶ 4).  If plaintiffs obtain the relief they seek, seeds treated with these registered

25  products will likely be removed from the market.  Furthermore, CropLife asserts that many of

26  its members have seed treatment registrations pending, which could become null if plaintiffs

27  win this lawsuit, thus affecting CropLife members' development work.

28

United States District Court

For the Northern District of California

*Second*, the grower intervenors (the National Corn Growers Association, the National Association of Wheat Growers, the National Cotton Council of America, and the American Soybean Association) have demonstrated a sufficient interest in our case. The declarations aver that "over 95 percent of corn seed planted in the United States is treated with a neonicotinoid pesticide" (Novak Decl. at ¶ 3). Large portions of soybean, cotton, and wheat are also grown using treated seeds. Accordingly, as sworn to in the declarations accompanying the motions, the availability of these treated seeds is critical to the growers' farming operations (Wilkens Decl. at ¶ 5; Adamas Decl.. at ¶ 5; Stoner Decl. at ¶ 4).

*Third*, the American Seed Trade Association and the Agricultural Retailers Association have a sufficient protectable interest in our case. The ASTA represents approximately 740 companies that develop, produce, and distribute seeds in the Untied States and abroad (LaVigne Decl. at ¶ 2). Of the seeds sold by these companies, 75% are treated with pesticides (*id*. at ¶ 3). The ARA represents over 300 agricultural retailers and distributors who supply farmers and ranchers with products, including the sale of seed, nutrients, and crop protection products. ARA members also apply registered pesticides to the seeds themselves (Coppock Decl. at ¶¶ 3–5). As sworn to in the declarations, these organizations' members will face economic harm if plaintiffs obtain the relief they seek and the organizations will also confront enhanced regulatory burdens.

Our court of appeals favors a "liberal policy in favor of intervention." *City of Los Angeles*, 288 F.3d at 397. Here, proposed intervenors have satisfied the elements set forth in Rule 24(b)(2). Accordingly, the motion to intervene is **GRANTED**.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss under Rule 12(b)(1) is **DENIED**. To the extent stated herein, the motion to intervene is **GRANTED**. As stated in a previous order (Dkt. No. 54), defendants shall lodge the administrative record by **JUNE 30, 2016**. The administrative record shall include all emails and memoranda discussing whether the agency should proceed by guidance versus some other procedure and/or discussing whether the guidance

would constitute final agency action.  The deadline for any party to file a summary judgment

motion shall be **AUGUST 11, 2016**, to be heard on the normal 35-day track.

**IT IS SO ORDERED.**

Dated:  May 13, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California